## Wentzel v. Reading Fidelity Building and Loan Association

*William Abbott Witman, Jr.,* for plaintiff.
*Joseph H. Sundheim,* for defendant.

SCHAEFFER, P. J., April 11, 1932.—Mrs. Bertha Wentzel, the plaintiff, subscribed for the purchase upon the instalment plan of certain shares of the defendant corporation. In August, 1930, due to retirement from business, she found that she would be unable to maintain the monthly payments on account of these shares and notified Harry Mayes, defendant's secretary, of her desire to withdraw. Her receipt books were surrendered to the company and a check properly signed by defendant's president, secretary and treasurer for the sum of $3323 was delivered to her at the office of the defendant company by the secretary, Mr. Mayes. Mayes then accompanied her to the bank upon which the check was drawn, identified her, and upon her endorsement of the check she received the cash. Mayes, the secretary of defendant company, asked her whether she would agree to leave her money in the Reading Fidelity Building and Loan Association and invest it at six per cent., and she agreed to this proposal. From the bank they went back to the office of the defendant company, where she gave to Mayes the sum of $3000, and he delivered to her a receipt written upon a letterhead of the defendant company bearing the name, the address of the company, the names of the officers and the telephone number of the company. The receipt written on this paper was as follows:

"August 29, 1930
"Received of Mrs. Bertha Wentzel three thousand and 00/100 dollars ($3000.00) which is to be applied to Building and Loan and upon which interest is to be paid semi-annually.
"[Signed]  HARRY MAYES
"Secy."

It is clear from the testimony that this sum of $3000 was never placed by Mayes in the treasury of the association, that the association never received it or any portion of it, and that the entire sum was embezzled by Mayes, the secretary. There is no evidence from which it can be found that the board or any of the officers of the association knew of this transaction concerning the

$3000 until Mayes's embezzlements were discovered. The plaintiff has brought this suit to recover the same from the association. Upon the trial a verdict was returned in favor of the plaintiff for the amount of plaintiff's claim, plus interest. The defendant has now moved for a new trial and also for judgment n. o. v. Upon the argument defendant withdrew its motion for a new trial, but contends that it is entitled to judgment upon the whole record.

The case was tried and submitted to the jury upon the issue whether Mayes was acting as the agent of the defendant when the plaintiff paid to him the sum of $3000 and took the receipt offered in evidence. For the first time upon argument the defendant raises the question as to its liability for money borrowed under the circumstances here existing. In other words, the defendant contends that under the Act of April 21, 1927, P. L. 333 (15 PS § 983), the attempted loan to the association was illegal and void, and that as the money never reached the association's treasury there is no liability on the part of the defendant to the plaintiff.

The Act of 1927, supra, is an act "prescribing a uniform method of issuing notes, by building and loan associations, for money borrowed," and provides that whenever any building and loan association borrows money, it shall issue to the lender its note for the amount borrowed only in the following manner and form:

"(a) Each such note shall have the corporate title of the association printed thereon.

"(b) A certified copy of the resolution of the board of directors of such association authorizing the loan, shall be permanently attached to such note, and each such resolution shall state the borrowing capacity of the association and the amount then owed by the association for borrowed money.

"(c) Such notes shall bear printed, consecutive, numbers and shall be issued from a bound notebook, containing a stub for such note, bearing the same number, and on which stub there shall be written the name and address of the payee, the date of the note, the date of maturity, the face amount of the note, and the rate of interest.

"(d) At least two officers of such borrowing association shall certify, on each stub, over their signatures, that the information contained thereon is correct and is in accordance with the note bearing the same number."

The note or paper delivered by Mayes to the plaintiff did "have the corporate title of the association printed thereon," but there was no compliance or attempted compliance with any of the other provisions of the act. No resolution of the board of directors of the association authorizing the loan had ever been passed. Of course, no such copy was attached to the paper. The note or paper was not issued from a bound notebook, consecutively numbered; there was no stub containing the address of payee or other data stipulated by the statute.

We are of the opinion that the noncompliance with the provisions of this statute renders the loan illegal and void and prevents recovery from the association. This is not a case in which the defendant corporation can be said to be estopped by reason of the receipt or use of the money, for clearly none of the money ever reached the association's treasury or was used or expended for or on behalf of the association. The statute having prescribed the only manner in which building and loan associations may borrow money, all other methods must be considered illegal. The principle applies that the courts will not assist an illegal transaction: Fowler v. Scully, 72 Pa. 456. "And a contract in violation of the statute cannot be enforced although not expressly made void: Fowler v. Scully, 72 Pa. 456; Columbia Bank and Bridge Co. v. Haldeman, 7 W. & S. 233; Holt v. Green, 73 Pa. 198; Seidenbender v. Charles, 4 S. & R. 151;

62

Mitchell *v*. Smith, 1 Binney 110. See, also, Hazle Drug Co., Inc., *v*. Wilner et al., 284 Pa. 361; 13 C. J. 320; Dillon on Municipal Corporations (5th ed.), volume 2, page 1154, section 777:" Foresman et al. *v*. Gregg Township et al., 297 Pa. 369, 372. And in Hazle Drug Co., Inc., *v*. Wilner et al., 284 Pa. 361, 367, the court says: "Furthermore, a contract made in violation of a statute cannot be enforced, regardless of whether a penalty is or is not provided for its violation: Columbia Bank and Bridge Co. *v*. Haldeman, 7 W. & S. 233; Fowler *v*. Scully, 72 Pa. 456; Vandegrift *v*. Vandegrift, 226 Pa. 254; Moyer et al. *v*. Kennedy, 76 Pa. Superior Ct. 523; Weed *v*. Cuming, 12 Pa. Superior Ct. 412." See, also, Endlich on Interpretation of Statutes, Sec. 455. The legislature in the enactment of the Act of 1927 in effect declared it to be a matter of public policy that building and loan associations should borrow money only in the method prescribed by that act. The plaintiff has failed to show that her money was loaned in the prescribed form, and, therefore, her alleged contract with the association cannot be upheld. A different result might, of course, have arisen if the association had actually received the money; but with that we have here no concern.

And now, to wit, April 11, 1932, rule for new trial is discharged and the rule for judgment n. o. v. is made absolute.

From Charles K. Derr, Reading, Pa.